By the Court.
Hoffman, J.
—The question is, have the plaintiffs shown, that in this transaction, they became purchasers for value of the note in question, in that sense which enables them to shut out a defence on the part of the maker of the note, clearly available against the original payee ?
In the first place, I think we must regard as of some influence upon the case, the credit which was given upon the books of the company of the notes in question, against the debit for the rent. This was not done until several days after the first of March, the date of the receipt. Baldwin says that it was within ten days. How one statement of the answer which is offered to be proven is, that the Atlas Company suspended business about the fifth of March. The credit was not given, as we are justified in assuming, until after that day, and then all hope of payment from the company was given up as vain. This circumstance rather sustains the inference that the plaintiffs did not intend to discharge the Atlas Company.
But supposing this fact inconclusive; then the evidence, irrespective of the receipt of the first of March, is indecisive; indeed it does not give any explanation of the receipt, or support any version of it in favor of either party. The Atlas Company *97 could not pay in money, offered the notes and wanted the matter settled. The plaintiffs took the notes.
The case, in my judgment, mainly rests upon the receipt of the first of March. It expresses that the notes, amounting to $1,250, “ were received, to be credited to the account of the Atlas Insurance Company, against the bills of this company (the plaintiffs) for rent.” The rent then due was $1,125.
It is consistent with the most critical construction of the receipt, and with a common sense interpretation of it, to hold, that the amount of the notes when and as collected, was to be credited to the account of rent; that if less than the rent due was received, that alone should be credited, but if the whole face of the notes was collected, the excess should be accounted for.
But the phrase “against the bills of this company” is used. There was but one quarter’s rent then due, that of February. Now some of the notes would not fall due until the May quarter became due; and in this view, the meaning may have been, that after paying the February quarter, the proceeds should be applied to that of May.
Without asserting that the receipt will not bear the meaning of an absolute acceptance of the notes in discharge of the rent due, and on account of that to accrue in May, we think it a more reasonable and apparent construction, that the sums the plaintiffs might realize should be credited as received, and The Atlas Company remain liable for any deficiency.
The principle, to be deduced from the authorities applicable to the present question, we consider tobe this: that the parties must have intended, upon a transfer and reception of other securities, to extinguish the subsisting debt. If one note is substituted for another not yet due, and the latter is given up, the intention is evident. If it is not surrendered, the presumption is the other way. All cotemporaneous acts, declarations, or receipts are to be used to shed light upon the question of intent. The extinction of a legal demand in its original form, is to be proven affirmatively: and the question, whether a party is a holder for value of the new securities, so as to displace in his favor any right or equity against the party to whom they were given, depends upon the fact being established of an intended and actual extinguishment. (Clark v. Ely, 2 Sandf. Ch. R., 168; White v. The *98 Springfield Bank, S Sandf. Sup. Ct. R., 222; Youngs v. Lee, 2 Kern., 551; The N. Y. Marbled Iron Works v. Smith, 4 Duer, 377; Farrington v. The Frankfort Bank, 24 Barb., 554.)
The case of Farrington v. The Frankfort Bank, was decided with the concurrence of the four judges of the fourth Circuit, and is very pertinent to the present action. The defendants had been in the habit of discounting drafts of the firm of Osborn, Turnbull & McDonald. On the 14th of January, 1856, they held two protested drafts, chargeable to such firm. Osborn, one of the firm, induced the plaintiff to indorse two drafts made by his firm, by false and fraudulent pretences. These were delivered to the defendants on the 17th of January, 1856. There was no agreement between the bank’s agent and Osborn, that the drafts should be received in payment of those under protest, but Osborn intended that they should be held as additional and collateral security, for the indebtedness then existing. Pomeroy, the cashier of the bank, on the 19th of January, 1856, passed the drafts in suit to the credit of Osborn, upon the books of the bank, and charged him with the protested drafts, and stamped them with the canceling iron; but they remained in the possession of the bank, in a drawer with papers of the like character.
It was held that the plaintiff, indorser of the drafts, was not precluded from any defence he was entitled to against them; that there was not an absolute discharge of the old debt within the rule of law; and relief was given to him, the action being on his behalf to obtain a cancelment of his indorsements.
So in the present case, I do not think that the plaintiffs ever abandoned their claim upon the Atlas Company for the rent; and therefore did not become purchasers, for value, of the note sued upon, so as to prevent the maker insisting upon any defence he possesses as against the payee.
The referee has therefore erred in his conclusion. A new trial must be had; and the order of reference discharged. The costs to abide the event.
Judgment accordingly.